IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BILLY WAYNE KEMP                                                      PLAINTIFF

        v.                              Civil No. 07-5056

CAPTAIN HUNTER PETRAY;
DEPUTY LEE; and DEPUTY
BARRETT all of the Benton
County Detention Center                                              DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Billy Wayne Kemp (hereinafter Kemp), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Kemp contends his constitutional rights were denied when on three days in March of 2007 he was denied his hour out of his cell, he was denied access to the phone, and he was denied the right to read a newspaper.

Defendants filed a motion for summary judgment (Doc. 12). Plaintiff filed a response to the motion for summary judgment (Doc. 24). Because I believed additional information was needed, I entered an order (Doc. 26), directing Kemp to complete, sign, and return an attached questionnaire that would serve as his supplemental response to the summary judgment motion. Kemp filed a timely response to the court's questionnaire (Doc. 27). The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

## I. BACKGROUND

Kemp was booked into the Benton County Detention Center (BCDC) on December 13, 2006, on pending criminal charges. *Plaintiff's Response* (Doc. 27)(hereinafter *Resp.*) at ¶ 1. He

AO72A
(Rev. 8/82)

remained incarcerated at the BCDC until March 19, 2007. *Id.* at ¶ 2.  During this period of time, Kemp was incarcerated solely because of the pending charges. *Id.* at ¶ 3.

The Benton County Sheriff's Office County Jail policy and procedure regarding telephone calls states that inmate telephone calls are collect with the exception of approved numbers by the Benton County Jail Administration. *Resp.* at ¶ 4.  On December 13, 2006, Kemp signed the Inmate Telephone System Notice, which provided that the Benton County Jail allows inmates to make calls as a privilege only and that all calls are collect with the exception of Bail Bond companies and other numbers that have been previously approved by the Sheriff. *Id.* at ¶ 5.

The BCDC makes and keeps a record of all inmate phone calls. *Resp.* at ¶ 6.  During his incarceration at the BCDC, Kemp placed hundreds of phone calls. *Id.* at ¶ 7(A).

On December 23rd Kemp requested all his court dates and was provided with them. *Resp.* at ¶ 8.  Kemp indicates he had to put in several requests to be provided the information. *Id.*

On January 1, 2007, Kemp was provided with his available bond amounts after he requested them. *Resp.* at ¶ 9.  Kemp believes the form was altered to reflect a timely response was made to it. *Id.*  On January 8th Kemp requested and received his court dates and available bond amounts. *Id.* at ¶ 10.

On February 28th Deputy Siler told Kemp and Inmate Goff to go back to their cells because their recreation time was up. *Resp.* at ¶ 11.  Kemp complied. *Id.*  All doors in E-103 showed closed. *Id.*  When Siler looked up from the log book, he saw three inmates on the floor fighting, when he opened the door to E 103 Kemp and Goff ran back to their cells and shut their doors. *Id.*

AO72A
(Rev. 8/82)

The records show Kemp placed calls on March 10, 2007.  *Id.* at ¶ 7(B).  However, Kemp contends he only made one quick call that day and was denied his recreation and the right to read the newspaper on that date.  *Id.*  at ¶ 7(B) and ¶ 7(C).

There was a phone in the pod.  *Resp.* at ¶ 7(D).  Kemp states that because of wet pain everyone was on lock-down and no allowed out of their cells.  *Id.*

Newspapers are passed out to all pods containing inmates everyday.  *Resp.* at ¶ 13. Whether or not an inmate is on disciplinary lock down, the inmate has access to a newspaper everyday.  *Id.* at ¶ 14.  Kemp agrees this normally occurs.  *Id.* at ¶ 13.  However, he states there were certains dates that they were not given newspapers because newspapers were not allowed in the cells.  *Id.*

Kemp maintains the cells at the BCDC were not large enough to perform push-ups, run in place, do sit-ups, or lunges.  *Resp.* at ¶ 15.  He states the design capacity of the double cells were constricting and showering only three times a week and trying to exercise in a cell with another detainee could cause conflict.  *Id.*  Kemp states he was trying to avoid creating other problems.  *Id.*

Defendants maintain Kemp did not submit any grievances regarding his claims pertaining to his allegations of unconstitutional conditions of confinement as alleged in his complaint. Kemp, however, states his grievances were never sent back to him.  *Resp.* at ¶ 16.

On numerous occasions both prior to and after March 9th and March 10th, Kemp contends Deputy Lee and Deputy Barrett denied him his hour out of his cell.  *Resp.* at ¶ 17. Kemp states he talked to Captain Petray about this and he got belligerent with him.  *Id.*  Kemp

-3-

similarly contends the two deputies denied him the use of the phone on numerous occasions and denied the newspaper to pod E103.  *Id.*  at ¶ 18.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

Defendants maintain they are entitled to summary judgment on all of Kemps' claims. First, they maintain he was not subjected to any unconstitutional conditions of confinement. Second, they maintain there is no constitutional right to the use of a telephone.  Moreover, they state Kemp used a telephone hundreds of times including during the time he contends he was

-4-

denied access to one. Finally, they maintain newspapers were distributed to the pods on a daily basis.

### *Lack of Exercise*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a

subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

A constitutional violation exists if jail officials are deliberately indifferent to a detainee's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).  A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.*  Among factors the court should consider in reviewing such a claim are:  (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement.  *Id.*

In his complaint, Kemp only alleged he did not receive an hour out of his cell for recreation on March 9th and 10th.  In responding to the summary judgment motion, Kemp asserts there were numerous dates both prior to and after March 9th and 10th that Lee and Barrett denied him his hour out.  *Resp.* at ¶ 17.  However, he provides no specifics regarding the dates this occurred or how frequently this occurred.  *Id.*  He suffered no physical injury as a result of being denied outside recreation.

It has been recognized that "short-term denials of exercise may be inevitable in the prison context."  *See Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001).  *See* also *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986)(fifteen days of no out-of-cell exercise not cruel and

-6-

unusual punishment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(45 minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody).   Clearly, Kemp has stated no claim of constitutional dimension on the facts alleged to exist in this case.

### Telephone Use

Detainees do not have a right to unlimited telephone use.  *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989).  Telephone access may be restricted so long as the restrictions are reasonable and are rationally related to legitimate security interests.  *Id.  See also Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988)(upholding policy limiting pre-trial detainee's telephone access to every other day).

In this case, Kemp maintains his rights were violated when he could not use the phone on March 9th through March 11th.  He also maintains there were various other unspecified dates when Lee or Barrett denied him use of the phone.

However, the records submitted as Defendants' Exhibit 6 show Kemp made hundreds of phone calls.  In fact, he concedes he placed hundreds of phone calls, *Resp.* at ¶ 7(A).  He also concedes he had phone access on March 10th and placed phone calls on that day.  *Id.* at ¶ 7(C) and ¶7(D).  Defendants' are entitled to summary judgment on this claim.

### Newspapers

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

*Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1972).   Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S. Ct. 2576, 33 L. Ed. 2d 683 (1972).

Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). "[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains." *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

It has been held that "[t]here is no basis for total restrictions on prisoners' access to the news in view of their clear First Amendment rights." *United States ex rel. Manicone v. Corso*, 365 F. Supp. 576, 577 (E.D. N.Y. 1973).   Furthermore, a number of courts have held that prisoners have a right to receive and read newspapers.  *See e.g, Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers); *Mann v. Smith*, 796 F.2d 79, 82-83 (5th Cir. 1986)(county jail's policy of banning newspapers and magazines violated a pretrial detainee's First Amendment rights where the state failed to show the ban served a legitimate government objective); *Wilkinson v. Skinner*, 462 F.2d 670, 673 n. 5 (2nd Cir. 1972)("refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights"); *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971)(prison authorities' denial of access to newspaper "Muhammad Speaks" constituted prior restraint in violation of First

-8-

Amendment); *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999)(absolute prohibition on subscription magazines and newspapers applied to administrative segregation inmates in Alabama is not reasonably related to legitimate penological goals).

In this case, defendants maintain that newspapers are passed out in all pods containing inmates everyday. Kemp concedes this is normally the case. *Resp.* at ¶ 13. However, on March 9th, 10th, and 11th, he maintains he was denied a newspaper because they were locked down in their cells and newspapers were not allowed in the cells. *Id.* He answered affirmatively when asked if inmates on disciplinary lock-down have access to a newspaper everyday. *Id.* at ¶ 14. On these few days because of wet paint, everyone in the pod was locked down in the pod and the normal procedures were not followed. *Id.* at ¶ 7(D).

Kemp was asked whether other than March 9-11, 2007, he was able to read the newspaper each day. *Resp.* at ¶ 19. He responded no. *Id.* However, despite be asking to explain how often he was denied the right to read the newspaper. *Id.* He merely responded: "Deputy Lee and Deputy Barrett denied the newspaper to E103 (pod) and I. Have witnesses." *Id.* These conclusory allegations are insufficient to show the existence of a genuine issue of material fact.

### Inadequate Grievance Procedure

Kemp maintains he submitted grievances but did not receive responses to them. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted). *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to

AO72A
(Rev. 8/82)

grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no

constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress

through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*,

932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not

compromise the inmate's constitutional rights, as access to the courts would still be available."

*Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000),

*aff'd*, 6 Fed. Appx. 187 (4th Cir. 2001)).  "[A]ny alleged due process violation arising from the

alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404

F.3d 371, 374 (5th Cir. 2005).

### IV.  CONCLUSION

I therefore recommend that the motion for summary judgment (Doc. 12) be granted and

this case dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which**

**to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

DATED this 22nd day of July 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-10-